UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
HEATHER CARPENTER and                          )          Index No. 11 CIV 8414 (DLC)
JULIO JOSE JIMENEZ-ARTUNDUAGA,
                                               )
                               Plaintiffs,                 **THIRD AMENDED**
                                               )          **COMPLAINT**
            -against-
                                               )          **JURY TRIAL DEMANDED**
THE CITY OF NEW YORK,
CHIEF OF DEPARTMENT JOSEPH J. ESPOSITO)
CHIEF OF PATROL JAMES P. HALL,                            ECF Case
SGT. ROBERT BYRNE, Shield # 247,               )
SGT. CHRISTOPHER NEWSOM, Shield # 201,
SGT. RODRIGUEZ, and                            )
SGT. PATRICK WRIGHT, Shield # 1332,
                                               )
                               Defendants.
-------------------------------------------------------------x

         Plaintiffs HEATHER CARPENTER and JULIO JOSE JIMENEZ-ARTUNDUAGA, by

their attorneys, the Law Office of Ronald L. Kuby, hereby bring this action under 42 U.S.C. §

1983 to redress their civil and legal rights, and allege as follows:

## PRELIMINARY STATEMENT

    1.      This is a civil rights action in which the plaintiffs, HEATHER CARPENTER and

JULIO JOSE JIMENEZ-ARTUNDUAGA, seek relief for the defendants' violations of their

rights secured by 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United

States Constitution.  This case arises from an October 15, 2011 incident in which members of the

New York City Police Department ("NYPD"), acting under color of state law and consistent with

the policy and practices of the NYPD, subjected Plaintiffs to false arrest, excessive force, and

deprivation of their constitutional rights, as part of an indiscriminate mass arrest at a Greenwich

Village Citibank branch after Occupy Wall Street demonstrators, and Citibank account holders, went to the bank to close their accounts.

2.     Plaintiffs seek compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

3.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights.

4.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

5.     Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## PARTIES

6.     Plaintiff HEATHER CARPENTER is and was at all times relevant herein a resident of Port Jefferson Station, New York. Plaintiff JULIO JOSE JIMENEZ-ARTUNDUAGA is and was at all times relevant a resident of the State of New Jersey.

2

7.      Defendant CITY OF NEW YORK is and was at all times relevant a municipal

entity created and authorized under the laws of the State of New York. It is authorized by law to

maintain a police department which acts as its agent in the area of law enforcement and for which

it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to

the maintenance of a police force and the employment of police officers. Defendant CITY OF

NEW YORK was at all times relevant herein the public employer of the individual defendants.

8.      Defendant JOSEPH J. ESPOSITO is and was at all times relevant herein Chief of

Department of the New York City Police Department. As the "highest-ranking uniformed

member," Chief ESPOSITO is responsible for the creation, implementation, and enforcement of

the practices, policies, and customs of the NYPD and its precincts. At all times relevant to this

complaint, Chief ESPOSITO was also the commanding officer who ordered, directed, and/or

authorized the mass arrest of persons, including Plaintiffs, at the Greenwich Village Citibank

branch on October 15, 2011. He is sued individually and in his official capacity.

9.      Defendant JAMES P. HALL is and was at all times relevant herein Chief of Patrol

of the New York City Police Department. As "plan[ner], direct[or] and coordinat[or] [of] the

development of the Police Department's uniformed officers on patrol," Chief HALL is

responsible for the creation, implementation, and enforcement of the practices, policies, and

customs of the NYPD and its precincts. Chief HALL also assisted and/or acted in concert with

Chief ESPOSITO and Sergeants ROBERT BYRNE, CHRISTOPHER NEWSOM,

RODRIGUEZ and PATRICK WRIGHT in violating the rights of Plaintiffs. He is sued

individually and in his official capacity.

3

10.     At all times relevant to this complaint, Defendants SGT. ROBERT BYRNE, SGT. CHRISTOPHER NEWSOM, SGT. RODRIGUEZ and SGT. PATRICK WRIGHT were sergeants employed by the New York City Police Department, who assisted and/or acted in concert with Chief ESPOSITO, Chief HALL and each other in violating the rights of Plaintiffs. They are sued individually and in their official capacities.

11.     At all times relevant to this complaint, Defendants JOSEPH J. ESPOSITO, JAMES P. HALL, ROBERT BYRNE, CHRISTOPHER NEWSOM, RODRIGUEZ and PATRICK WRIGHT (collectively, "the individual defendants") were duly appointed and acting officers, servants, employees and agents of the New York City Police Department. At all times relevant they were acting in their capacity as a New York City police officer, and were operating under color of the laws, statutes, ordinances, regulations, polices, customs, and usages of the State of New York and the New York City Police Department, a municipal agency of Defendant CITY OF NEW YORK.

12.     At all times relevant, the individual defendants violated clearly established constitutional standards under the Fourth and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

## STATEMENT OF FACTS

13.     Plaintiff Heather Carpenter is a 23 year-old woman who is studying to become a Certified Nursing Assistant. To pay for the schooling and the certification, she works full-time as a direct care counselor for mentally disabled persons at a group home on Long Island.

4

14.    Plaintiff Julio Jose Jimenez-Artunduaga immigrated to the United States from Columbia in 2005, to pursue his dreams of owning a house, a car, and a dog. He works part-time as a bartender in Brooklyn, and does construction work on the side.

15.    Julio recently proposed to Heather, and they are engaged to be married. Prior to October 15, 2011, the young couple was dedicating much of their free time to planning the wedding, which is scheduled for July 28, 2012.

16.    The quiet lives of this young couple changed on October 15, 2011, when they became two of the faces of the 99% by becoming victims of police brutality after being falsely arrested and assaulted by police officers during an indiscriminate mass arrest of Occupy Wall Street protesters and Citibank account holders at a New York City Citibank branch. Plaintiffs' arrests, which were particularly unjustified and unconscionable, were captured on video and in photographs taken by protesters and/or onlookers present at the scene. Many of those videos were posted on social media websites, and have since been viewed by over 375,000 people.

17.    The Occupy Wall Street movement, which began in New York City and has spread around the world, has sparked political discussion of a myriad of issues including corporate greed, economic injustice, and the eroding middle class. The messages of the movement are wide-ranging, and include, *inter alia*, opposition to the Wall Street bailouts, highlighting the role of large banks in the economic collapse, calling for greater accountability of financial institutions and their executives, spotlighting income inequality and how the concentration of wealth translates into political power, and challenging our current system of democratic capitalism.

18.     The now-global Occupy movement captured the attention of major media outlets and viewers around the world after police officers began violently attacking and falsely arresting innocent protesters engaged in otherwise peaceful demonstrations. Amateur videos documenting the acts of police brutality were posted on various websites, and quickly went viral. Videos of Plaintiffs' arrests are now among them.

19.     On October 15, 2011, as part of the Occupy Wall Street movement, activists assembled in Washington Square Park with a plan to peacefully protest against the predatory lending practices and excessive fees of big banks by marching to local branches of Citibank and Chase and closing their accounts.

20.     Plaintiffs shared the frustration of these protesters. About a month earlier, Heather, a Citibank account holder, had received a letter from the bank notifying her that she would be charged a $17.00 monthly maintenance fee for her checking account unless she maintained a minimum balance of $6,000.00.

21.     On October 15, 2011, at around 2:00 p.m., the young couple joined approximately 20 other protesters, and marched to a Greenwich Village Citibank branch, located at 555 Laguardia Place, New York, New York. Ms. Carpenter's role in the protest was to close her account. Mr. Jimenez-Artunduaga accompanied her.

22.     Upon entering the bank, some of the protesters participated in a teach-in, announcing the amount of their debt, discussing their student loan experiences, and reciting sobering statistics related to the debt of college graduates.

23.     Plaintiffs approached a Citibank teller, and Heather stated that she wished to close her accounts due to the bank's newly established $17 monthly fee.

6

24.     While the teller assisted Heather in closing the accounts, Julio heard a bank representative request that the protesters move their demonstration outside.  In an attempt to avoid any potential conflict, Julio exited the bank and waited for his fiancé outside.

25.     After her accounts were successfully closed and her money withdrawn, Heather was given a receipt and she proceeded toward the exit of the bank.

26.     At that time, police officers began barricading the doors of the bank.  Heather informed the officers that she was a customer, showed them her receipt, and she was permitted to leave.  Others tried leaving, but were denied by plainclothes officers guarding the exit.

27.     Less than one minute after Heather walked out of the bank, Chief of Department JOSEPH J. ESPOSITO, the highest-ranking uniformed member of the NYPD, entered the establishment with several other officers of the NYPD.

28.     At the decision and order of Chief ESPOSITO, police officers inside the Citibank branch locked the doors of the establishment, imprisoning all persons inside the bank.  Chief ESPOSITO then ordered the arrest of all persons trapped inside the bank's doors for criminal trespass.

29.     A disc of exhibits containing videos and photographs documenting the events of the October 15 mass arrest at Citibank is enclosed herewith.  Exhibit A is a video taken from inside the bank, which shows Heather leaving the establishment, the arrival of Chief ESPOSITO, the orders given by Chief ESPOSITO, and several subsequent events described herein relating to the mass arrest of OWS protesters and Plaintiffs.  Heather Carpenter is the well-dressed red-head, wearing a black suit and a white collared shirt.

7

30.     Exhibit B is a shorter video clip, showing Heather's exit, the entrance of Chief ESPOSITO, and concluding with the orders of Chief ESPOSITO.

31.     As seen in Exhibits A and B, Chief of Department JOSEPH J. ESPOSITO provided the other officers with instructions, then announced to the people barricaded inside Citibank, "You're all under arrest."

32.     Defendant Sergeants CHRISTOPHER NEWSOM, RODRIGUEZ, and ROBERT BYRNE were inside the bank with Chief ESPOSITO, and other officers, as ESPOSITO ordered the mass arrest.

33.     SGT. RODRIGUEZ – who, as described herein, assaults and falsely arrests Heather – is wearing a blue cap and a blue zippered hoodie sweatshirt with white letters across the front reading "RALPH LAUREN."  A photo of SGT. RODRIGUEZ is attached hereto, and is also provided on the enclosed disc, as Exhibit C.

34.     SGT. NEWSOM – who assists in the false arrest of Julio and assaults him – has spiked hair and is wearing a black suit, gray tie, and light-colored, collared shirt.  He is the man in the foreground on the far right side of the picture attached hereto, and provided on disc, as Exhibit D.

35.     SGT. BYRNE – who also assists in Julio's arrest – is wearing a plaid shirt underneath a blue jacket with a gray, fleece collar.  In the photo attached as Exhibit E, BYRNE is the man on the right side, whose body is partially blocked by the white-shirt of Chief ESPOSITO in the foreground.

8

36.    Upon exiting the bank, Heather reunited with Julio outside near the large front window of the bank. Heather and Julio engaged in a brief discussion with one another, when they observed persons inside the establishment motion that they were being arrested.

37.    Heather began recording video on her Ipod, which she was holding in her hand.

38.    All of a sudden, SGT. RODRIGUEZ confronted Heather and grabbed her by the left arm, stating, in sum or substance, "Excuse me Miss, you have to come with me. You were inside with everybody else. You have to come with me."

39.    Heather responded, "I'm a customer," and removed the receipt from her purse as proof. Julio put his arm on Heather and tried to escort her away.

40.    SGT. RODRIGUEZ pushed Julio aside, then wrapped his arms around Heather from behind. Cupping the bottom of her breasts with his two hands, SGT. RODRIGUEZ lifted Heather off the ground and began carrying her toward the bank entrance. See the photo attached as Exhibit F.

41.    Chief of Patrol JAMES P. HALL was standing nearby. Upon information and belief, as SGT. RODRIGUEZ approached Chief HALL, HALL stated, in sum or substance, "watch it," and pointed to RODRIGUEZ's offensively placed hands. SGT. RODRIGUEZ immediately released his grip, assuming a jazz hands[1] position.

---

1 One of the signature moves of the iconic dancer-choreographer-director Bob Fosse, "jazz hands" is a cabaret-styled dance position characterized by open hands, with palms facing the audience, and fingers splayed. More recently, jazz hands, also referred to as "spirit fingers," have gained popularity among teenagers and young adults after the move became a humorous subject of several comedy sketches and films, including the 2000 movie "Bring It On," a comedy about a high school cheerleading team.

9

42.    HALL then grabbed Heather by the back of her suit jacket and assisted SGT. RODRIGUEZ in plowing Heather back toward the front doors of the bank.

43.    Chief HALL is pictured in the photographs attached hereto as Exhibit G and Exhibit H.  HALL is the uniformed officer wearing a white shirt, on the left side of each photograph.

44.    As his fiancé was being taken away from him, Julio stood with both hands in the air, motioning "why?" as shown in Exhibit G.

45.    Julio was then charged by Defendant Sergeants CHRISTOPHER NEWSOM and PATRICK WRIGHT, who grabbed him from behind and started dragging back toward the entrance of the bank.

46.    In the picture attached as Exhibit H, Julio is being pulled in different directions by the defendant officers effecting his false arrest:  PATRICK WRIGHT, the uniformed sergeant in blue is holding Julio by the back of his suit jacket, pulling him to the left.  BYRNE has Julio by the right arm, pulling it to the right like a game of tug-of-war.  NEWSOM, the man in the suit standing face to face with Julio, is lunging toward him as if he is about to exert force in yet a third direction.

47.    Immediately thereafter, SGT. NEWSOM swung his right arm around Julio's neck from behind, and he and SGT. BYRNE dragged Julio all the way back inside the vestibule of the bank.

48.    The attack on Julio continued inside the vestibule, where Julio was surrounded by approximately seven police officers, who were pulling him in conflicting directions, contorting

different parts of his body. One of the defendant officers kicked Julio in the back of the knee, attempting to knock his legs out from under him.

49.    SGT. WRIGHT then grabbed Julio by the back of his collar and tie and pulled upward, cutting of Julio's circulation and airway. Julio turned his head back and screamed in pain.

50.    WRIGHT responded to Julio's cry of pain by grasping his left arm, pulling it behind Julio's back, and forcefully lifting it upward into a hyperextended position. In severe pain, Julio screamed once more, but SGT. WRIGHT only pulled harder.

51.    One of the officers bound Julio's wrists behind his back with plastic "flex" cuffs. He was then taken back outside the bank's doors, and forced to sit on the ground with his hands cuffed behind his back as a uniformed officer straddled him. See the picture attached hereto as Exhibit I.

52.    During the attack, Julio sustained a deep laceration to the index finger of his right hand and pain and swelling to his leg, among other injuries. His bloody hand is shown in the photo attached hereto as Exhibit J.

53.    While Julio was being dragged by the defendant officers into the vestibule of the bank, Heather was pushed by SGT. RODRIGUEZ and Chief HALL all the way to the front doors of the bank, where she was shoved face-first into the corner, and swarmed by other officers. Heather was pinned in the corner with her face pressed against the glass door, still being held by Chief HALL when, upon information and belief, SGT. RODRIGUEZ bound her wrists behind her back using metal handcuffs.

11

54.    She then heard one of the officers request flex cuffs, and a female officer told Heather that they would be replacing the metal cuffs with plastic ones.

55.    Upon information and belief, SGT. RODRIGUEZ applied the flex cuffs to Heather's wrists.  In affixing the handcuffs, RODRIGUEZ intentionally tightened the cuffs excessively, causing Heather to experience great physical pain to her right wrist.

56.    Heather told the officer that the right cuff was too tight.  SGT. RODRIGUEZ responded, in sum or substance, "no its not; its fine."  As a result of SGT. RODRIGUEZ's conduct, Heather sustained burns, scrapes, and bruises to her right wrist, which left a small scar. Her wrist continued to cause her pain for three weeks after the incident.

57.    After re-cuffing Heather, the officers brought her back inside the vestibule of the bank for a little over a minute, then forced her back outside where she was ordered to stand in the corner near the doors once again.  The picture attached hereto as Exhibit K shows Heather surrounded by officers in the corner, as Julio sits in cuffs in the front of the building.

58.    Exhibit L is a video of the arrests taken from outside the bank.  Exhibit M is the same video clip, but shows the incident in slow motion.  Exhibit N is a video taken by Heather, herself, with her Ipod in hand as she was being arrested.  While the video provides few visuals, the sound is powerful.  One can hear the noise of the scuffle, the sound of the officers placing the cuffs on Heather, and Heather's cries for help.

59.    Exhibit O is a video taken from inside the bank, showing the attack on Julio by the defendant officers inside the vestibule of the bank.  Exhibit P is the same video clip, but in slow motion.  Exhibit A also contains similar footage.

60.     Two police vans were parked in front of the bank: one for males, one for females. Plaintiffs were stuffed in those vehicles along with approximately twenty others who had been arrested inside the bank. The picture attached as Exhibit Q shows Julio being loaded into the male police van.

61.     Plaintiffs were removed to Central Booking, where they were finger printed and processed. At around 1:00 a.m., they were transferred to the tombs at 100 Centre Street.

62.     On October 16, 2011, after approximately 32 hours in police custody, Heather Carpenter appeared before a judge and was released on her own recognizance.

63.     Julio Jose Jimenez-Artunduaga spent approximately 30 hours in police custody before being arraigned, and was released on his own recognizance.

64.     A criminal complaint charged Heather and Julio with Resisting Arrest and Criminal Trespass in the Third Degree, even though it was the defendants who dragged them into the bank – the premises on which they had allegedly trespassed – to arrest them.

65.     Plaintiffs had not committed any criminal acts. They went to the Citibank branch on October 15, 2011 for the lawful purpose of closing Heather's accounts, and Heather left upon completing that mission. Julio left even sooner, considerate of the requests of bank security although not directed at him.

66.     Citibank, itself, issued a statement on the day of the arrests which belies any accusations of trespass against Heather:

> A large number of protesters entered our branch at 555 La Guardia Place around 2:00 PM today. They were very disruptive and refused to leave after being repeatedly asked, causing our staff to call 911. The Police asked the branch staff to close the branch until the protesters could be removed. Only one person asked to close an account and was accommodated.

13

Citibank Home page, *Citibank Statement Regarding Protester Arrests* (posted by Citibank Public Affairs on Oct. 15, 2011 at 6:12 p.m.), available at http://new.citi.com/2011/10/citibank-statement-regarding-protester-arrests.shtml.

67.　　On November 14, 2011, the District Attorney, New York County, announced his intention to dismiss the charges against both Plaintiffs, on their respective court dates, on the ground that the People could not carry its burden of proof. The charges against Julio were dropped on November 21, 2011. The charges against Heather were dismissed on December 15, 2011.

68.　　The conduct of the individual defendants, in restraining, arresting, and imprisoning Plaintiffs was totally without probable cause, and was done maliciously, falsely and in bad faith.

69.　　At all times during the events described above, the defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

70.　　As a direct and proximate result of the actions taken by the individual defendants – in restraining, falsely arresting, and falsely imprisoning Plaintiffs, and in using excessive and unnecessary force – Plaintiffs suffered and continue to suffer physical pain, emotional trauma, mental anguish, humiliation and embarrassment, among other things.

## CAUSES OF ACTION

### FIRST CLAIM: FALSE ARREST OF HEATHER CARPENTER

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

71.     Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

72.     The conduct and actions of Defendants ESPOSITO, HALL and RODRIGUEZ on October 15, 2011, acting under color of law, in arresting and detaining or causing the arrest and detention of Heather Carpenter without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

73.     ESPOSITO, HALL and RODRIGUEZ are liable for ordering and/or directly participating in the acts described herein and for failing to intervene to protect Heather Carpenter from the illegal conduct of their fellow officers.

74.     As a direct and proximate result of the foregoing, Ms. Carpenter was deprived of her liberty, was subject to great humiliation and serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### SECOND CLAIM: EXCESSIVE FORCE AS TO HEATHER CARPENTER

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

75.     Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

76.     The conduct and actions of Chief HALL and Sergeant RODRIGUEZ on October 15, 2011, acting under color of law, in grabbing, offensively touching, dragging or otherwise assaulting and battering Heather Carpenter, and in affixing the flex cuffs to the wrists of Heather Carpenter in an excessively tight fashion, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

77.     Chief HALL and Sergeant RODRIGUEZ are liable for directly participating in the acts described herein and for failing to intervene to protect Heather Carpenter from the illegal conduct of their fellow officers.

78.     As a direct and proximate result of the foregoing, Ms. Carpenter was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

## THIRD CLAIM: FALSE ARREST OF JULIO JOSE JIMENEZ-ARTUNDUAGA

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

79.     Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

80.     The conduct and actions of Defendants ESPOSITO, NEWSOM, WRIGHT, and

16

BYRNE on October 15, 2011, acting under color of law, in arresting and detaining or causing the arrest and detention of Julio Jose Jimenez-Artunduaga without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

81.    ESPOSITO, NEWSOM, WRIGHT, and BYRNE are liable for ordering and/or directly participating in the acts described herein and for failing to intervene to protect Julio from the illegal conduct of their fellow officers.

82.    As a direct and proximate result of the foregoing, Julio Jose Jimenez-Artunduaga was deprived of his liberty, was subject to great humiliation and serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### FOURTH CLAIM:  EXCESSIVE FORCE AS TO JULIO JOSE JIMENEZ-ARTUNDUAGA

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

83.    Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

84.    The conduct and actions of Sergeants NEWSOM, WRIGHT and BYRNE on October 15, 2011, acting under color of law, in grabbing, striking, kicking, beating, choking or otherwise assaulting and battering Julio, was excessive and unreasonable, was done intentionally, willfully,

maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

85.      NEWSOM, WRIGHT and BYRNE are liable for directly participating in the acts described herein and for failing to intervene to protect Julio from the illegal conduct of their fellow officers.

86.      As a direct and proximate result of the foregoing, Julio Jose Jimenez-Artunduaga was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

## FIFTH CLAIM:  MUNICIPAL LIABILITY AS TO ALL CLAIMS

### LIABILITY OF DEFENDANT CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

87.      Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

88.      The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiffs, and is liable for the damages suffered by Plaintiffs as a result of the conduct of the defendant officers.  The conduct of the defendant officers was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

89.      Upon information and belief, at all times relevant to this complaint Defendant CITY OF NEW YORK, acting through the NYPD, had in effect a policy, practice, custom and usage that

condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

90.     The planned Citibank and Chase protests were part of both the Occupy Wall Street movement and the Bank Transfer Day initiative.  The events of October 15, 2011 were among the first of many protests in which activists would march to a bank branch and attempt to withdraw their money and close their accounts with large financial institutions.

91.     Upon information and belief, Defendant CITY OF NEW YORK planned and implemented a policy, practice, custom and usage of controlling the OWS protests and those who attended the bank protests, that was designed to and did preempt lawful activities by ordering and effecting indiscriminate mass arrests, illegally arresting protesters, including bank customers, and needlessly detaining them for excessively long periods.  Upon information and belief, the CITY OF NEW YORK consciously disregarded the illegality and unconstitutionality of said arrests and detentions in order to facilitate and promote the CITY OF NEW YORK's desired reputation as corporate friendly and pro-bank.

92.     Upon information and belief, Plaintiffs were targeted for arrest and prosecution in accordance with this policy, practice, usage and custom, after undercover officers of the CITY OF NEW YORK infiltrated the Occupy Wall Street demonstrations, posing as protesters, and effected indiscriminate mass arrests of protesters and bank customers alike, without making an individual determination of probable cause.

93.     As a direct and proximate result of the CITY OF NEW YORK's wrongful policies, practices, customs and/or usages complained of herein, Plaintiffs were deprived of their liberty, subject to great humiliation, and otherwise damaged and injured.

94.     Additionally, the CITY OF NEW YORK knew or should have known of the defendant officers' propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to October 15, 2011, the CITY OF NEW YORK was aware of numerous complaints of police misconduct involving the false arrest of, or use of excessive force against Occupy Wall Street protesters by members of the NYPD. Despite its knowledge of such incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

95.     Prior to October 15, 2011, the CITY OF NEW YORK developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in New York, which caused the violations of Plaintiffs' rights.

96.     It was the policy and/or custom of the CITY OF NEW YORK to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the CITY OF NEW YORK.

97.     It was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise and discipline its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

98.     As a result of the above described policies and customs, police officers of the CITY OF NEW YORK, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

99.     The wrongful policies, practices, customs and/or usages complained of herein,

demonstrated a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to

the constitutional rights of persons within the city, and were the direct and proximate cause of the

violations of Plaintiffs' rights alleged herein.

## SIXTH CLAIM: SUPERVISORY LIABILITY AS TO ALL CLAIMS

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

100.    Plaintiffs incorporate by reference the allegations set forth in each preceding

paragraph as if fully set forth herein.

101.    Defendant Chief of Department JOSEPH J. ESPOSITO, acting under color of state

law and in the course and scope of his duties and functions as a supervising officer of the NYPD,

personally ordered and directed the indiscriminate mass arrests of persons at the Greenwich Village

Citibank branch on October 15, 2011, and failed to intervene as officers used excessive force in

effecting the arrests of Plaintiffs and other protesters.

102.    Defendant Chief of Patrol JAMES P. HALL, acting under color of state law and in the

course and scope of his duties and functions as a supervising officer of the NYPD, personally

authorized and assisted in the arrests of Plaintiffs and other protesters at the Greenwich Village

Citibank branch on October 15, 2011, used and/or authorized the use of excessive force against

Plaintiffs, and failed to intervene as officers used excessive force in effecting the arrests of Plaintiffs

and other protesters.

103.    Chief ESPOSITO and Chief HALL further failed to remedy the wrongs committed by

the police officers of the defendant CITY OF NEW YORK under their supervision, and failed to

properly train, supervise or discipline officers employed by the CITY OF NEW YORK under their

supervision, encouraging, rather than deterring, acts of police misconduct against Occupy Wall Street

protesters, and anyone among them, including bank customers who went to the branch for the lawful

purpose of closing their accounts.

104.    As a direct and proximate result of the misconduct and abuse of authority described

herein, Plaintiffs suffered deprivation of liberty, physical and emotional injury, mental anguish,

suffering, humiliation and embarrassment.


**WHEREFORE**, Plaintiffs demand the following relief jointly and severally against all of the

Defendants:

a.    Compensatory damages in the amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    The convening and empanelling of a jury to consider the merits of the claims herein;

d.    Costs and interest and attorney's fees;

e.    Such other and further relief as this Court may deem just and proper.


Dated: New York, New York
       August 13, 2012

LEA SPIESS, Esq. [LS-7866]
RONALD L. KUBY, Esq. [RK-1879]
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, New York 10011
Email: LSpiess@kubylaw.com
(212) 529-0223 (t)
(212) 529-0644 (f)

Attorneys for Plaintiffs

Exhibit C



Exhibit D



Exhibit F



Exhibit G



**Exhibit I**





© AP

Exhibit K

Exhibit Q

